### HENRY J. MANION v. CHARLEY LOCKHART, TREASURER OF THE STATE OF TEXAS.

No. 7355.   Decided March 16, 1938.
(114 S. W., 2d Series, 216.)

*Wurzbach & Glosserman,* of San Antonio, for relator.

*William McCraw,* Attorney General, *W. J. Kemp* and *H. L. Williford,* Assistants Attorney General, for respondent.

MR. JUSTICE SHARP delivered the opinion of the Court.

Relator seeks by mandamus to compel respondent to pay him the sum of $1,363.39, decreed to him in a judgment rendered in the county court of Bexar County, Texas, in Cause No. 21570, styled Estate of Walter B. Manion, Deceased.

The facts are undisputed. Andrew M. Smith, the duly qualified administrator of the estate of Walter B. Manion, deceased, wound up said estate and deposited certain funds with the State Treasurer. The State Treasurer on the 29th day of February,

1936, acknowledged receipt of the sum of $1,363.39, and also acknowledged having received a copy of the court order from the clerk of the probate court of Bexar County. The check was cashed by the State Treasurer. Relator further shows that on June 7, 1937, he filed his petition in the above described cause in the county court of Bexar County, and obtained judgment for that amount; that a copy of the judgment entered in favor of relator was presented to respondent for payment, but payment was refused, on the ground that, acting on the opinion of the Attorney General of Texas, rendered August 28, 1932 (Op. No. 2890), the money had been placed in the general revenue fund. Respondent further suggested that the claim be presented to the Legislature for an appropriation to cover same.

The Legislature has furnished a complete method for the sale and disposition of property belonging to estates, where the parties entitled thereto do not demand their share of an estate within six months after an order approving the report of the commissioners of partition. Articles 3644 to 3660, Vernon's Annotated Texas Statutes.

Article 3644 in part reads: "Upon the settlement of the final account of any executor or administrator, if the heirs, devisees or legatees of the estate, or assignees, or any of them, do not appear or are not represented in the court, and there are any funds of such estate remaining in the hands of the executor or administrator, the county judge shall enter an order upon the minutes requiring such executor or adminstrator to pay such funds to the State Treasurer."

Article 3652 provides: "When funds of an estate have been paid to the State Treasurer, any heir, devisee or legatee of such estate, or their assignees, or any of them, may recover the portion of such funds to which he or they would have been entitled."

Articles 3653 and 3654 provide the mode of recovery and that citation shall be issued to the county attorney or district attorney to appear and represent the interest of the State in such suit. Article 3653 reads: "The person claiming such funds shall institute his suit therefor, by petition filed in the county court of the county in which the estate was administered, against the State Treasurer, setting forth the petitioner's right to such funds, and the amount claimed by him."

Article 3655 reads: "The proceedings in such suit shall be governed by the rules for other civil suits; and should the plaintiff establish his right to the funds claimed, he shall have a

judgment therefor, which shall specify the amount to which he is entitled; and a certified copy of such judgment shall be sufficient authority for the Treasurer to pay the same."

Thus it is seen that the law provides the method for the payment of certain funds to the State Treasurer, and specifically prescribes how said funds may be collected from the Treasurer. After describing in detail the procedure to be pursued to collect such money from the Treasurer, it is finally provided: *"and a certified copy of such judgment shall be sufficient authority for the Treasurer to pay the same."*

But it is contended that Section 6 of Article VIII of the Constitution, which provides that "No money shall be drawn from the Treasury but in pursuance of specific appropriations made by law," controls this case, and that such moneys paid to the Treasurer by reason of Articles 3644 et seq. should be deposited in the general revenue fund as provided for under Article 4386 of the Revised Civil Statutes, and be subject to withdrawal under the provisions of Article 4371 of the Revised Civil Statutes.

It is also contended that the statutes relating to the escheat of property (Article 3272 et seq.) are applicable and should be considered in the construction of the articles now before us. After providing for the escheat of property and the sale of same by the sheriff, the law also commands the sheriff "to pay the proceeds of such sale, less the costs of the court, into the State Treasury." (Article 3282.)

Article 3283 reads: "When title to real property, or any part thereof, is adjudged to the State, it shall be subject to divestiture at the suit of any claimant not personally served with citation in such escheat proceedings, who shall institute suit therefor against the State within two years after such judgment has become final, who shall, upon trial of such issue, be adjudged the owner of the property or any part thereof, for the recovery of which the suit is brought."

Article 3287 provides: "If the court shall find that such person is entitled to recover such money as heir, devisee, legatee, or legal representative, it shall make an order directing the Comptroller to issue his warrant on the Treasury for the payment of the same, but without interest or costs; a copy of which order under the seal of the court shall be sufficient voucher for issuing such warrant."

The object of the escheat statutes is to vest title to the prop-

erty escheated in the State, and they provide a method for its recovery. They also provide that any claimant of the property may within a certain period file suit in the district court of Travis County against the *State* for such property, or money so escheated, and fix a maximum period of time for such suit.

Prior to the enactment of Article 3644 et seq. the law provided that where funds derived from property sold under the law, and "the funds have been paid into the State Treasury," those entitled to such property could file suit and recover judgment therefor; and the order of the court would be sufficient authority for the State Treasurer to pay over the amount. See Paschal's Digest, Articles 5755 to 5763; Gammel's Laws of Texas, Vol. 6, pp. 355 and 356.

· The previous law was amended by the enactment of Article 3644 et seq., under which this cause arose, and those articles now provide that funds derived from the proceedings thereunder shall be "paid to the State Treasurer," and not "into the State Treasury," as demanded under the escheat statutes (Article 3272 et seq.) and under the provisions of the old law. See Paschal's Digest, Articles 5755 tc 5763, and Gammel's Laws, Vol. 6, pp. 355 and 356.

1  We have briefly pointed out the difference in the language used in Articles 3644 to 3660 as compared with the language used in the prior laws (Articles 5755 to 5763, Paschal's Digest) and in the articles relating to the escheat of property (Articles 3272 to 3289). It clearly appears from the language used in Article 3644 et seq. that all the funds are to be paid to the State Treasurer, and not into the State Treasury. The law also provides that the Treasurer shall issue his receipt therefor, and same shall be filed with the clerk of the court, and such receipt shall be recorded in the minutes of the court. It also provides that any person claiming such funds paid the Treasurer under the provisions of this law shall institute suit, in the county court in which the estate is administered, against the *State Treasurer* for the amount claimed; and a certified copy of the judgment entered therein shall be sufficient authority for the Treasurer to pay same.

A careful analysis of the objects· sought to be attained by the passage of these articles (3644 to 3660) clearly excludes the idea that the money should be placed in the general revenue fund and be subject to payment only by legislative appropriations. Nor do we think that the provisions of Articles 4371 and 4386 of the Revised Civil Statutes control this case, or that the Legislature intended, by the enactment of those two articles, to· amend or change the mode of procedure described in Articles

3644 to 3660. The clear purpose of the law, as we construe it, is that the Treasurer shall keep a record of such funds, and be prepared to pay claimants the amounts due them when the law has been complied with. In other words, the State Treasurer becomes a custodian or trustee by virtue of the articles of the statutes. Smith et al. v. Paschal et al., 1 S. W. (2d) 1086 (Texas Com. App.).

The law makes the Attorney General the legal adviser of the heads of the various departments of the State Government. (Article 4399, Revised Civil Statutes.) It is shown that the Attorney General on August 18, 1932, did give an opinion to the Honorable George H. Sheppard, State Comptroller, and the Honorable Moore Lynn, State Auditor, concerning the status of certain funds carried on the books of the State Comptroller and of the State Treasurer. The many funds described in the statutes and in the Constitution are fully discussed in the opinion, and it was held that many funds deposited in the State Treasury as special funds should be, by virtue of Article 4386, deposited in the general revenue fund, and disbursed therefrom. Among those listed as such funds to be deposited in the general revenue fund are the funds paid to the State Treasurer under Articles 3644 to 3660. However, we disagree with the opinion of the Attorney. General wherein it was held that funds paid to the State Treasurer under the provisions of those articles · should be deposited in the general revenue fund. We have carefully considered the history of those articles and the nature of the funds created thereunder, and we think it is contrary to the letter and the spirit of the statutes for such funds to be taken away from the State Treasurer and deposited in the general revenue fund. If the Legislature had intended to make such radical change in the statutes when it enacted Article 4386, we think that intention would have been expressed in plain language.

2 It is shown that respondent, acting on the opinion rendered by the Attorney General, deposited this money in the general revenue fund of the State. Respondent has in no manner profited by such action on his part. He in good faith deposited such money in the general revenue fund; which now requires that it be appropriated by the Legislature in accordance with the provisions of Section 6 of Article VIII of the Constitution. Respondent does not now have in his possession such funds, and, therefore, he is unable, without an act of the Legislature, to pay same to those entitled thereto. Having complied with the advice of the Attorney General, in making such transfer of

funds, it would be both unjust and unfair to undertake by writ of mandamus to compel the Treasurer to pay this amount of money out of his personal funds. It was contrary to law for the funds to be deposited in the general revenue fund, as was done, but they have passed beyond the control of the Treasurer, and it is now impossible for the Treasurer to pay to relator the amount of funds so deposited with him.

**3** The rule is well settled that a writ of mandamus will not issue to compel a respondent to do something that it is impossible for him to do, and the issuance of such writ of mandamus would be fruitless. Holcombe v. Fowler, 118 Texas 42, 9 S. W. (2d) 1028; Kemp v. Wilkinson, 113 Texas 491, 259 S. W. 912; Hogue v. Baker, 92 Texas 58, 45 S. W. 1004; Arkansas Bldg. & Loan Assn. v. Madden, 91 Texas 461, 44 S. W. 823; 25 Tex. Jur., Sec. 7, p. 522, and cases cited.

**4** It is undisputed that relator has fully complied with the law and is entitled to be paid the sum of money claimed by him. It is not shown, however, that relator cannot obtain the money due him by another complete and adequate remedy. While it is true that the money due relator has been placed in the general revenue fund, the Legislature has not refused to make a specific appropriation to pay relator's demand therefor. Besides, he has an adequate remedy by an ordinary suit. The rule is well established that mandamus does not lie where relator has another plain, effective, and adequate remedy to obtain the relief to which he may be entitled. Ordinarily a writ of mandamus must be the last resort, and it will be refused if there be another remedy which is effective and complete. Holcombe v. Fowler, 118 Texas 42, 9 S. W. (2d) 1028; Bivens v. Robison, 117 Texas 541, 8 S. W. (2d) 664; Glidden Stores v. Boyd, 116 Texas 172, 287 S. W. 1093; State v. Fisher, 94 Texas 491, 62 S. W. 540; Jackson v. Swayne, 92 Texas 242, 47 S. W. 711; Hogue v. Baker, 92 Texas 58, 45 S. W. 1004; Arkansas Bldg. & Loan Assn. v. Madden, 91 Texas 461, 44 S. W. 823; 28 Tex. Jur., Sec. 8, pp. 525 et seq.

Therefore relator's petition for writ of mandamus is refused.

Opinion delivered March 16, 1938.