

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

February 4, 1950

Hon. Jesse James
State Treasurer
Austin, Texas

Opinion No. V-997.

Re: The procedure for handling
funds of unknown stockhold-
ers deposited in the State
Treasury under Senate Bill
402, 51st Legislature, after
dissolution of domestic cor-
porations.

Dear Mr. James:

Your request for an opinion is as follows:

"Please note the enclosed file with reference to
a deposit of $2,749.75, which we have just made to our
Suspense Fund # 31 - Dissolution of Solvent Corpora-
tions.

"Heretofore deposits of this kind have been made
as above to our Suspense Account where it remains for
a period of seven years, after which it is escheated and
transferred to General Revenue.

"However, a new law was enacted by the 51st Leg-
islature, Regular Session - see Chapter 576.

"This deposit was made by Baker, Botts, Andrews
and Parish of Houston for the W-K-M Company of that
city with request that it be handled under the new law.

"Under the new law it would be escheated imme-
diately. The new law also requires that the state adver-
tise the amounts and owners of the money being held by
the state.

"If this money is immediately escheated and de-
posited in General Revenue, it would require court ac-
tion on the part of owners in order to get their money
from the state. Heretofore all that has been necessary
was for owners to furnish proof of ownership.

"Pending your reply this money has been placed
in Suspense. We should like very much to have you an-
swer the following questions:

"1. Can the cost of advertising be taken out of this deposit?

"2. Should the money remain in Suspense Account a reasonable length of time to see if any part, or all, is claimed by owners? If so, how long should it remain in Suspense until it is transferred to General Revenue?

"Your answer to these questions will be appreciated."

The statute necessary for us to construe in order to answer your questions is Senate Bill No. 402, Acts 51st Legislature, R.S. 1949, ch. 576, p. 1122, codified as Article 1395a, V.C.S., which is as follows:

"Section 1. Where, in the dissolution of a corporation and the distribution of its assets among its stockholders, a stockholder entitled to a distributive portion is unknown or cannot be found, the president and directors or the managers of the affairs of the corporation at the time of its dissolution, or the receiver, as the case may be, shall deposit or transfer such distributive portion to the State Treasury of the State of Texas and it shall be deemed to be escheated property. In the event distribution is made other than in cash, the president and directors or the managers of the affairs of the corporation at the time of its dissolution, or the receiver, as the case may be, shall determine the fair value of such distributive portion and shall either set aside from the assets of the corporation cash in an amount equal to such fair value and deposit such cash in the State Treasury, or shall cause such distributive portion to be sold for cash at not less than the fair value so determined in such manner as such president and directors or managers of the affairs of the corporation at the time of its dissolution, or the receiver, as the case may be, shall determine, and shall deposit such cash in the State Treasury. At the time of making any deposit with the State Treasury, as herein provided, the president and the directors or managers of the corporation's affairs, or the receiver, as the case may be, shall file with the State Treasurer a written report giving the name of the stockholder, if known, his last known address, the amount of the distributive portion and such other information as the State Treasurer may require. The State Treasurer, upon the receipt of any such deposit and the information herein provided for, shall forthwith cause to be published.

in one issue of a newspaper of general circulation in Travis County, Texas, a notice of the receipt of such deposit and the name of the stockholder entitled thereto, giving his last known address and the amount of the distributive portion so deposited. The stockholder or other person entitled to an interest in any distributive portion deposited in the State Treasury, as herein provided, shall have the same rights with regard to the recovery of the same as are provided by law for claimants of escheated property, except that where a distributive portion has been reduced to cash, as hereinabove provided, the rights of the stockholder or other person entitled to an interest in such distributive portion shall be limited to the recovery of such moneys so deposited. If a distributive portion is not deposited in the State Treasury as herein provided, the president and directors of the corporation or the managers of its affairs, or the receiver, as the case may be, having control of the affairs of the corporation at the time of the dissolution shall be jointly and severally liable to the stockholder or other person entitled to an interest in a distributive portion for the amount of such portion not so deposited."

The significant portion of the foregoing statute is that part which provides that the president, directors or managers of the dissolved corporation " . . . shall deposit or transfer such distributive portion to the State Treasury of the State of Texas and it shall be deemed to be escheated property." If it was the intention of the Legislature in the use of this phrase to presently effect a completed escheat of the property to the State without affording due process of law, we are of the opinion that the statute would be unconstitutional.

The pertinent provision of the Constitution of this State dealing with escheats is Section 1, Article XIII, wherein it is provided that:

" . . . the Legislature shall provide a method . . . for giving effect to escheats; . . ."

It is stated in 17 Texas Jurisprudence 73, Escheat, Section 3, with reference to the above constitutional provision that:

"This provision of the constitution does not authorize the legislature to create an escheat--that would be a taking of property without due process of law; it simply directs that provision be made for a method of ascertaining whether or not there has been one."

Section 8, Article V of the Constitution of Texas also provides that:

"The District Court shall have original jurisdiction in all suits in behalf of the State to recover . . . escheats . . ."

The very early case of Caplen v. Compton, 27 S.W. 24 (Tex. Civ. App., 1893, error ref.), held that:

"The constitution (article 13, § 1) does not authorize the legislature to create an escheat; it simply directs it to provide a method for ascertaining whether or not there has been in any case an escheat. No man can be deprived of his property except by due course of law. Bill of Rights, § 19."

From the above it follows that if we construe the phrase "shall be deemed to be escheated property" which appears in the statute as ipso facto creating an escheat, we would be compelled to hold the statute unconstitutional.

We think this language, however, is susceptible of a different interpretation which would uphold the validity of the act. We are required to construe a statute, where words reasonably admit of it, so as to give it effect, rather than to nullify it. Trustees of Independent School District of Cleburne v. Johnson County Democratic Executive Committee, 122 Tex. 48, 52 S.W.2d 71 (1932).

With the above rule of statutory construction in mind, we will now consider whether the phrase "shall be deemed to be escheated property" may be reasonably accorded a meaning which would obviate the necessity of declaring this statute unconstitutional. It will suffice to note a few cases construing similar language. In the case of Federal Deposit Insurance Corporation v. George-Howard, 55 F.Supp. 921 (W.D. Mo. 1944), the court construed the word "deem" to mean "have an opinion," to "believe," to "suppose." In the case of State ex rel. Hoagland v. School District No. 13 of Prairie County, Mont., 151 P.2d 168 (Mont. Sup. 1944), the court construed the word "deemed" to mean "considered." In Lumbermens Mutual Casualty Co. v. McIntyre, 21 S.E.2d 446 (Ga. C.A. 1942), the court said that "deemed" is synonymous with "considered." In the case of Zimmerman v. Zimmerman, 155 P.2d 293 (Ore. Sup. 1945), the court construed the word "deemed" as used in a constitutional provision relating to residence of one in the military service or in the employ of the United States as creating only a disputable presumption. Giving the same effect to the word "deemed" in this statute, as applied in the foregoing cases, we think it may be said to mean nothing more than that the property shall be considered as

escheated property or in the light of escheated property, rather than as a positive adjudication by the Legislature that said property is actually escheated to the State by virtue of the terms of the act itself. Given this interpretation, the phrase "deemed to be escheated property" does not render the act invalid. We assume, as we must, that it was the intention of the Legislature to pass a valid act, rather than one in contravention to the Constitution.

The remaining portion of the statute which requires our attention reads as follows:

"The stockholder or other person entitled to an interest in any distributive portion deposited in the State Treasury, as herein provided, shall have the same rights with regard to the recovery of the same as provided by law for claimants of escheated property . . ."

The remedy provided under the escheat statutes here referred to is that contained in Articles 3286-3287, V.C.S., as follows:

Article 3286. "If any person appears after the death of the testator or intestate and claims any money or property paid into the treasury under this Title, as heir, or devisee, or legatee thereof, he may file a petition against the State in the District Court of Travis County, Texas, stating the nature of his claim and praying that such money be paid to him. A copy of such petition shall be served on the Attorney General of this State at least twenty (20) days previous to the return day of the process. Any such suit shall be instituted within four (4) years of the date of the final judgment escheating such property to the State, and not thereafter."

Article 3287. "If the court shall find that such person is entitled to recover such money as heir, devisee, legatee, or legal representative, it shall make an order directing the Comptroller to issue his warrant on the Treasury for the payment of the same, but without interest or costs; a copy of which order under the seal of the court shall be sufficient voucher for issuing such warrant."

Since the foregoing statutes with reference to the remedy in escheat proceedings have, by the explicit terms of Article 1395a, been adopted as the remedy for claimants of funds deposited in the Treasury under such article, we believe it will simplify

our problem if we reconstruct the two foregoing provisions of the escheat statute to make them logically applicable to claimants of funds transferred to the Treasurer under Article 1395a. As reconstructed they would read substantially as follows:

Article 3286: "If any stockholder or other person entitled to an interest in any distributive portion deposited in the State Treasury appears and claims any money or property paid into the Treasury under this Act, he may file a petition against the State in the District Court of Travis County, Texas, stating the nature of his claim and praying that such money be paid to him. A copy of such petition shall be served on the Attorney General of this State at least twenty (20) days previous to the return day of the process. Any such suit shall be instituted within four (4) years of the date such funds are deposited in the State Treasury, and not thereafter."

Article 3287: "If the court shall find that such stockholder or other person entitled to an interest in any distributive portion so deposited is entitled to recover such money as a stockholder or other person entitled to an interest in any distributive portion so deposited in the State Treasury, it shall make an order directing the Comptroller to issue his warrant on the Treasurer for the payment of the same, but without interest or costs; a copy of which order under the seal of the court shall be sufficient voucher for issuance of such warrant."

We have made appropriate substitution for the words "heir", "legatee", "devisee", "this title" and "the final judgment escheating such property to the State." Of course, if the claimant is an heir, legatee or devisee of a deceased stockholder or other person entitled to an interest in such funds, then the use of the words "heir", "legatee", or "devisee" as they appear in the escheat statute would be applicable.

The case that affords us the best guide as to the status of the funds transferred to the State Treasury under this statute is Manion v. Lockhart, State Treasurer, 131 Tex. 175, 114 S.W.2d 216 (1938). In this case the court had before it the statute pertaining to funds belonging to an estate, where the parties entitled thereto did not demand their share of the estate within six months after an order approving the report of the commissioners of partition. The significant provision of the statute considered by the court directed that the funds in estate cases be paid to the State Treasurer, and not into the State Treasury. The Court said:

"A careful analysis of the objects sought to be
attained by the passage of these articles, 3644 to 3660,
clearly excludes the idea that the money should be placed
in the general revenue fund and be subject to payment
only by legislative appropriations. Nor do we think that
the provisions of articles 4371 and 4386 of the Revised
Civil Statutes, as amended, Vernon's Ann. Civ. St. arts.
4371, 4386, control this case, or that the Legislature in-
tended, by the enactment of those two articles, to amend
or change the mode of procedure described in articles
3644 to 3660. The clear purpose of the law, as we con-
strue it, is that the treasurer shall keep a record of such
funds, and be prepared to pay claimants the amounts due
them when the law has been complied with. In other
words, the State Treasurer becomes a custodian or trus-
tee by virtue of the articles of the statutes. Smith et al.
v. Paschal. et al., Tex. Com. App. 1 S.W.2d 1086."

Similar language is used in the statute under considera-
tion, for it provides that the funds be paid to the State Treasury and
not into the State Treasury. Thus it is quite manifest that the Leg-
islature did not intend to treat these funds as escheated funds. The
fact that the Legislature saw fit to adopt part of the escheat statute
in providing a remedy for claimants, does not necessarily mean that
the funds are escheated to the State by the act itself and that the en-
tire escheat statute applies.

It is observed that in the statutes adopted by the Legis-
lature as the necessary procedural statutes (Arts. 3286-3287, V.C.S.)
quoted above, Article 3287 provides, "but without interest or costs,"
which means without interest or costs to the State. Since the Leg-
islature in this act has directed that the State Treasurer upon re-
ceipt of the funds shall advertise in one issue of some newspaper of
general circulation in Travis County that he has custody of the funds,
and prescribes the information that the advertisement shall contain,
but makes no specific provision as to compensation, we think it may
be reasonably inferred that this cost may be appropriately taxed a-
gainst the funds in the same manner that the cost is taxed against
escheated funds. This provision of the statute in regard to adver-
tising is for the benefit of claimants of the fund and not the State,
hence it should bear the cost of any precautionary measures pre-
scribed by the Legislature for the benefit of any bona fide claimants
to the fund.

We therefore answer your first question in the affirma-
tive. That is, the cost of advertising is to be taxed against the funds
so deposited.

Since the procedural statute here adopted fixes a mini-
mum period of time within which claimants shall file suit, as in

escheat proceedings, which under the statute is four years from the date of the judgment, you should hold the funds, less the cost of advertising, in suspense for a period of four years from the date of the receipt of the funds. If at the expiration of that period no suit has been filed as prescribed in the procedural statute adopted, the funds should then be transferred to the general revenue. Of course, if in the intervening time a claimant has filed suit as prescribed by statute and should prevail, the funds will be available without appropriation by the Legislature to pay claimants who have judicially established their title to the funds.

## SUMMARY

Funds belonging to unlocated stockholders of dissolved corporations paid to the State Treasurer as provided in Senate Bill No. 402, Acts 51st Leg., R.S. 1949, ch. 576, p. 1122 (Art. 1395a, V.C.S.), should be kept in a suspense account for a period of four years from the date deposited, unless the owner or owners of such funds establish title thereto before the expiration of four years from the date of deposit. Claimants may establish ownership and title to such funds within four years from the date transferred to the State Treasurer in the same manner as provided by law for establishing ownership and title to escheated funds.

The cost of advertising by the State Treasurer in the manner prescribed by Article 1395a should be charged against the funds.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

W. V. Geppert
Taxation Division

By L. P. Lollar
Assistant

Charles D. Mathews
Executive Assistant

LPL/mwb