

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

October 29, 1951

Hon. Homer Garrison, Jr., Director
Texas Department of Public Safety
Austin, Texas                    Opinion No. V-1334.

                                 Re:  Applicability of Sections
                                      140, 141, and 142 of Arti-
                                      cle 6701d, V.C.S., requir-
                                      ing inspection of motor
                                      vehicles, to State-owned
                                      vehicles, and the legality
                                      of selling inspection
                                      stickers to approved in-
                                      spection stations instead
                                      of collecting for the
                                      stickers after they are
                                      issued by the inspection
Dear Sir:                             stations.

          You have requested the opinion of this office
on the following questions:

          "1.  May the Department of Public Safety
     sell official inspection stickers to approved
     inspection stations instead of placing such
     stickers on consignment and requiring periodic
     transmittal of fees and audit of accounts?
     This might entail issuance of new stickers to
     replace old stickers no longer valid at the
     end of the year.  In the event an official in-
     spection station went out of business and had
     a small supply of stickers on hand, we would,
     of course, have to reimburse the station for
     unused certificates.

          "2.  The law provides that we shall col-
     lect $.25 for each inspection made.  What is
     the application of this provision as it relates
     to state-owned vehicles operated by this depart-
     ment, the Highway Department and other State
     agencies?"

          Your questions are concerned with the provisions
of House Bill 223, Acts 52nd Leg., R.S. 1951, ch. 141, p.

240, codified as amendments to Sections 140, 141, and 142 of Article 6701d, V.C.S.  The Act provides for compulsory inspection of certain vehicles operated on the highways.  Inspection is to be evidenced by a sticker placed on the vehicle, and an inspection fee of $1.00 is to be charged.  The stickers are to be furnished by the Department, which receives one-fourth of each fee.

Your first question relates to your authority to sell the inspection stickers to approved inspection stations for the fee of 25¢ per sticker which the Department of Public Safety is entitled to realize, in lieu of collecting from the stations after the stickers have been issued.

We find no authority for such procedure.  The express provisions of the statute indicate a distinguishable procedure for handling the funds by the Department.

The entire inspection program is under the continuing supervision of the Department.  Thus it is provided in Section 140 of the statute:

"(c)  Official inspection stations appointed and supervised by the State of Texas shall make all inspections pursuant to the provisions of this Section, . . .  The Department shall cause one (1) inspection to be made in the year commencing with the effective date of this Act, and annually thereafter. . .  The Department shall have power to make rules and regulations with respect to the periods and the character and extent of the inspections to be made."

In addition to the supervisory function of the Department, we find that Section 141 (d) provides in part that:

"The fee for compulsory inspection to be made under this Section shall be one Dollar ($1).  One fourth ($\frac{1}{4}$) of each fee shall be paid to the Department and shall be set up in a special fund in the State Treasury for the purpose of paying the expense of the operation of this law."

It will be seen that all the Department is entitled to under the law is one-fourth of each fee.  There

can be no liability for any fee until an inspection is
made, and it necessarily follows that there is no duty
to remit the State's portion of the fee prior to such
liability, in the absence of some provision requiring
an advance deposit or remittance.  The Department, then,
clearly could not require the payment of its portion of
the fee until the inspection is accomplished.  This
would preclude the Department from selling the inspec-
tion certificates to inspection stations.

In addition to the foregoing, the revenue real-
ized from the one-fourth of the fees exacted is placed
in a special fund in the State Treasury.  The procedure
you propose by way of refunding to an inspection station
the sales receipts for stickers remaining unsold at the
end of an inspection period or when the inspection sta-
tion goes out of business could not be accomplished out
of the State Treasury, in the absence of statutory au-
thority therefor.  Manion v. Lockhart, 131 Tex. 175, 114
S.W.2d 216 (1938); Att'y Gen. Op. 0-44 (1939).

Furthermore, Section 142 (b) provides that:

"The Department shall furnish to inspec-
tion stations certificates of inspection . . ."
(Emphasis supplied.)

The requirement that the Department shall "fur-
nish" the certificates, without any provision for advance
payment or deposit at the time of furnishing, negatives
any intention that they be "sold" to the inspection sta-
tions.  The only security for compliance by inspectors
with all the terms and conditions of the Act, including
the remittance of fees, is a bond requirement.  This in-
dicates that prepayment or a deposit was not contemplated.

We therefore conclude that the statute does not
authorize the Department to sell inspection stickers to
approved inspection stations prior to the accomplishment
of inspections.

Your second question concerns the possibility
of exempting State-owned vehicles from the provisions of
the Act relating to compulsory inspection.

Section 140 of the Act sets out the affirmative
requirement of securing inspections, and provides in part:

"It shall be the duty of the Texas Department of Public Safety to require every owner of a motor vehicle, trailer, semitrailer, pole trailer, or house trailer, registered in this State, to have the mechanism, brakes, and equipment upon such vehicles inspected . . . as hereinafter provided . . ."

The foregoing Section is an amendment to, and becomes a part of, Article 6701d, V.C.S., known as the "Uniform Act Regulating Traffic on Highways." When we turn to the provisions of Article 6701d which pertain specifically to the exemptions to be extended to the operation of that entire Act, we find in the exemption sections the following provision:

"Section 24. The provisions of this Act applicable to the drivers of vehicles upon the highways shall apply to the drivers of all vehicles owned or operated by the United States, this state or any county, city, town, district, or any other political subdivision of the state, subject to such specific exceptions as are set forth in this Act with reference to authorized emergency vehicles."

Obviously, no general exemption is contemplated for State-owned vehicles to the operation of the "Uniform Act Regulating Traffic on Highways," of which the amendments to Sections 140, 141, and 142, relative to inspections, are a part.

However, the exaction of compulsory inspection in Section 140 is made of every "owner." Turning to the definitions set out in the "Uniform Act Regulating Traffic on Highways," we find that the word "owner" is specifically defined, in Section 10(d), as being "A person who holds the legal title of a vehicle . . ." Section 10(a) defines a "person" as "Every natural person, firm, co-partnership, association or corporation."

Regardless of whether State agencies, such as the Highway Department which you have mentioned, can be an "owner" within the above definitions, we think that the term "owner" as used in Sections 140, 141, and 142, as amended by House Bill 223 of the 52nd Legislature, which we have under consideration here, is used in its generally accepted sense, and would include State agencies in whose name the title of the vehicle is recorded.

To construe the Act as exempting State-owned vehicles would be inconsistent with the purpose of assuring safer vehicles on the highways. The definition of "owner" does not necessarily control its meaning where the context indicates that the word is used in its generally accepted sense. See Motor Investment Company v. City of Hamlin, 142 Tex. 486, 179 S.W.2d 278 (1944). In that case, the Supreme Court of Texas was construing a section of the "Certificate of Title Act," Article 1436-1, V.P.C., which refers to an "owner." That term is specifically defined under that law as excluding manufacturers and dealers. Nevertheless, the court, in construing the statute there in question held:

"It is true that Section 45 deals with motor vehicles exposed for sale by the 'owner thereof,' and the word 'owner,' as used in its technical sense, as defined in Section 4 excludes manufacturers and dealers. But we are of the opinion that in this instance the Legislature uses the phrase 'owner thereof' in the broad or generally accepted sense, and that the section in question was intended to apply to every motor vehicle exposed to sale by the one to whom it belongs, regardless of whether he be manufacturer, importer, or dealer, or a consumer who has acquired his interest therein after the first sale . . ."

Furthermore, there is the consideration of whether the motor vehicles of the State agencies which are proposed to be inspected are "registered in this State" within the provision of Section 140 which exacts the inspection requirement only of "a motor vehicle, trailer, semitrailer, pole trailer or house trailer, registered in this State."

We think the motor vehicles of State agencies meet this requirement, irrespective of the fact that they are entitled to exempt license tags. They are required to register but they are exempt from the payment of the fees. Thus Article 6675a-3, V.C.S., provides in part:

"Owners of motor vehicles, trailers and semi-trailers, which are the property of, and used exclusively in the service of the United States Government, the State of Texas, or any County, City of School District thereof, shall

apply annually to register all such vehicles, but shall not be required to pay the registration fees herein prescribed, . . ."

It is therefore our conclusion that the motor vehicles and other types of vehicles described in Section 140 of Article 6701d, owned by State agencies, are required to be inspected just as the vehicles of any private owner.

Having determined that the motor vehicles and the affected vehicles owned by State agencies are subject to the inspection requirement, we turn to the question of the payment of fees by such State agencies.

Section 140, as last amended, provides that the inspections may be accomplished by two alternative agencies -- "at State appointed inspection stations or by State Inspectors."

Section 141 describes the inspections authorized to be done by inspection stations and prescribes the regulation and administration of such inspections. This section provides that there shall be a one dollar fee for inspections by inspection stations, and that one-fourth of this one dollar fee -- which, of course, would be twenty-five cents -- shall be paid to the Department of Public Safety.  Quite clearly, no fee is authorized when the inspection is done by State inspectors, if such are appointed, because the inspection to be done by State inspectors is authorized by Section 140, and the inspection for which a fee may be collected is that authorized by Section 141, under which latter section no reference to an inspection by State inspectors is found.

Assuming, then, that the inspections of the motor vehicles and other affected vehicles are to be done by State inspection stations, in that event such State agencies are liable for the inspection fee.  The expenditure for the inspection of the vehicles is comparable to any other maintenance item necessary for the operation of the vehicle.  The fact that part of the fee will go to the Department of Public Safety will not preclude its application.  In this connection, this office has previously held in Opinion V-589 (1948) that the State Registrar of Vital Statistics could charge other State agencies a fee for making certified copies of birth and death certificates.

In any event, the payment of any fee by any State agency is dependent upon there being an appropriation out of which such payment may be made.

## SUMMARY

The Department of Public Safety is not authorized to sell inspection stickers required by Sections 140, 141, and 142 of Article 6701d, V.C.S., to inspection stations prior to the accomplishment of inspections.

The compulsory inspection of motor vehicles and other described vehicles required under Sections 140, 141, and 142 of Article 6701d, V.C.S., applies to all State agencies. Such State agencies are liable for the one dollar fee when the inspection is made by an inspection station, but they are not liable for any fee when the inspection is made by a State inspector.

APPROVED:

Ned McDaniel
State Affairs Division

Jesse P. Luton, Jr.
Reviewing Assistant

Everett Hutchinson
Executive Assistant

DJC:jmc

Yours very truly,

PRICE DANIEL
Attorney General

By Dean J. Capp
    Assistant