

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

August 26, 1957

Dr. Henry A. Holle                Opinion No. WW-241
Commissioner, State
 Department of Health         Re:  Handling of funds received from
Austin, Texas                          the federal government and va-
                                       rious municipalities pursuant to
                                       provisions of House Bill 434,
                                       Acts of 55th Legislature, Regu-
Dear Dr. Holle:                        lar Session, 1957.

    Your request for an opinion, dated August 12, 1957,
concerns the interpretation and execution of the provisions
of House Bill 434, page 235, Acts 55th Legislature, Regular
Session, 1957.

    The Act was designed to enable the State to partici-
pate in and receive grants pursuant to the Federal Housing Act
of 1954, as amended. The latter Act, and the administrative
rules promulgated pursuant thereto, make federal funds avail-
able to state planning agencies to "facilitate urban planning
for smaller communities lacking adequate planning resources".
The federal grants in each instance shall not exceed 50 per
centum of the estimated cost of the work for which made. The
remainder of the aggregate costs must be provided by the state
and may be derived by the latter from "various sources such as
state appropriations, gifts or contributions of cash or tech-
nical services from aided municipalities". House Bill 434
designates the State Department of Health as the State agency
to receive said federal funds and to contract with reference
thereto.

    In connection with the foregoing, you have propounded
for our consideration the following questions:

    1. May the Department of Health assess each
participating city a sum, in addition to the ac-
tual project costs, sufficient to employ personnel
needed to effectively administer the program?

    2. If the funds from the federal government
and from the applicant-city are deposited in the
State Treasury, can warrants against such a special
account be issued?

3.  If there is no authority for depositing funds from municipalities in the State Treasury and withdrawing them, can the funds received from the federal government and from the municipalities legally be deposited in a local bank and checks issued against said account for planning services rendered in order to carry out the planning program?

4.  If either of the above mentioned procedures are not authorized, will you kindly suggest to us, if possible, the procedure for handling these funds which will permit us to carry out the intent of the provisions of H.B. 434?

Section 1 of House Bill 434 provides as follows:

"The State Department of Health is hereby authorized, upon request of the governing body of any municipality having a population of 25,000 or less in this State; (a)  to arrange planning assistance (including surveys, urban renewal plans, technical services and other planning work) and to arrange for the making of a study or report upon any planning problem of such municipality, submitted to the State Department of Health, providing however that the employees of the State Department of Health shall not themselves make such surveys, studies or reports. (b) to agree with such governing body as to the amount, if any, to be paid to the State Department of Health for such service, and (c) to apply for and accept grants from the Federal Government or other sources in connection with any such assistance, study, or report, and to contract, with respect thereto.  The regular functions of the Texas State Department of Health may be utilized on this program, provided that any additional employees shall be paid from sources other than General Revenue funds of the State."

It is noted that the Legislature has not appropriated any state funds to carry out the provisions of House Bill 434. Section 1b of the Act authorizes the State Department of Health to agree with the governing body of each participating city as to the amount, if any, to be paid to the State Department of Health and Section 1c prohibits use of general revenue funds to employ additional personnel for such service.  We think it clear that the Legislature contemplated that the state's share of the project costs should be derived from the participating cities with the single exception that the regular functions of the Department of Health may be utilized.

House Bill 434 authorizes the State Department of Health and the participating city to agree on the amount to be paid by the city. The amount agreed upon can doubtless include not only the state's pro rata share of the project cost but may include, if necessary, an additional sum representing the city's fair share of the added administrative costs, of a continuing nature, incurred by the Health Department in administering the program. This view finds support in the fact that House Bill 434 expressly prohibits the use of general revenue funds for such purposes but indicates that funds derived from other sources may be so expended. The distribution and assessment of such costs must, of course, be fairly and equitably made as between the various cities.

Your first question is accordingly answered in the affirmative.

Your second question involves the handling and disbursement of the funds received from both the federal government and the municipalities. A careful analysis of the objects sought to be attained by House Bill 434 and the Federal Housing Act of 1954, excludes the idea that such funds should be deposited in the general revenue fund and be subject to payment only by legislative appropriations. We think that such monies may properly be placed in the hands of the State Treasurer, but not in the State Treasury, who becomes a custodian or trustee thereof, disbursing same under the directions of the State Department of Health in fulfillment of the purposes for which same were received. In other words, the funds here provided are trust funds and do not belong to the State in its sovereign capacity, but are received and are to be expended for a special purpose.

This view is supported by the Supreme Court of Texas in the case of Friedman v. American Surety Co. of New York, 151 S.W.2d 570. In discussing a special fund (Unemployment Compensation Fund) the Court said:

"The money here involved is not the property of the State in any capacity but is a Trust Fund to be held out of the State Treasury, but in the hands of the State Treasurer as trustee, for the benefit of a class of employees. . . .

"In Manion v. Lockhart, 114 S.W.2d 216, this court clearly decided that it is not in violation of our constitution to make the State Treasurer custodian of a fund that does not belong to the State, and does not belong in the State Treasury."

Dr. Henry A. Holle, page 4   (WW-241)


        See also: <u>Manion v. Lockhart, State Treasurer</u>, 131
Tex. 175, 114 S.W.2d 218; <u>Smith v. Paschal</u>, 1 S.W.2d 1086 (Tex.
Comm.App.); <u>Tatum v. Wheeless</u>, 180 Miss. 800, 178 So. 95; 108
A.L.R. 595.

        In reply to your second question you are advised that
the funds received from both the federal government and the mu-
nicipalities may properly be placed in the hands of the State
Treasurer, but not in the State Treasury, as a trust fund, and
be disbursed therefrom for the purposes for which received.

        In view of our answer to your second question, it be-
comes unnecessary that we answer the last two questions.

SUMMARY

        Pursuant to House Bill 434, Acts 55th Legisla-
ture, Regular Session, 1957, page 235, the State
Department of Health is authorized to agree with
each participating municipality as to the latter's
pro rata share of the project costs. The amount
agreed upon may include an additional sum repre-
senting each city's fair share of the added adminis-
trative costs, of a continuing nature, incurred by
the State Department of Health in administering the
Act.

        The funds received by the State Department of
Health from both the federal government and the par-
ticipating municipalities may properly be placed in
the hands of the State Treasurer, but not in the
State Treasury, as a trust fund, and be disbursed
therefrom for the purposes for which received.

                        Very truly yours,

                        WILL WILSON
                        Attorney General of Texas

LP:jl:wb                 By _Leonard Passmore_
APPROVED:                   Leonard Passmore
OPINION COMMITTEE           Assistant
H. Grady Chandler, Chairman
Mary Kate Wall
W. R. Hemphill
Roger Daily
REVIEWED FOR THE ATTORNEY GENERAL
BY:        Geo. P. Blackburn