

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

*modified WW-991-A*

**WILL WILSON**
**ATTORNEY GENERAL**

January 27, 1961

Mr. O. B. Ellis, Director　　　　　　Opinion No. WW-991
Texas Department of Corrections
Huntsville, Texas　　　　　　　　　Re: Construction and
　　　　　　　　　　　　　　　　　　　effect of Article
　　　　　　　　　　　　　　　　　　　5382d of Vernon's
Dear Mr. Ellis:　　　　　　　　　　　Civil Statutes

You have requested our opinion on the following questions:

　　　"1. Should royalties and rentals paid
after the passage of Article 5382d, Vernon's
Civil Statutes, on leases of prison lands
which were executed prior to June 2, 1951,
be credited to the Special Mineral Fund of the
Texas Department of Corrections?"

　　　"2. Should all revenue be credited to
the Special Mineral Fund of the Texas Department
of Corrections where such revenue is derived
from leases on prison lands which were executed
after the effective date of Article 5382d, VCS?"

Article 6203a, Vernon's Civil Statutes, created the Board
for Lease of Texas Prison Lands. This Board was empowered to
lease all or any part of lands owned by the State of Texas as
Texas prison lands. This Act also provided that "Royalties
as stipulated in the sale shall be paid to the General Land
Office at Austin, Texas, <u>for benefit of the General Revenue
Fund...</u>" We are advised that pursuant to this Act the Board
leased certain prison lands, from which oil and gas has been
produced. Royalties therefrom have been received and were
deposited to the credit of the General Revenue Fund as pro-
vided in the Statute.

Subsequently, Article 5382d, Vernon's Civil Statutes, was
enacted by the 52nd Legislature and became effective on June 2,
1951. This Act provided that lands thereafter owned or held
for the use or benefit of any Department, Board, or Agency of
the State of Texas might be leased. The Board is comprised of
the Commissioner of the General Land Office, the Attorney
General, and "the particular President or Chairman of the
Board or Agency, or Head of the Department charged with the

responsibility of management or control of lands now owned by, or that may hereafter be owned by, or held in trust for, the use and benefit of said Department, Agency, or Board." Section 16 of this Statute provides that "any amounts received under and by virtue of this Act shall be deposited in the State Treasury to the credit of special funds to be known as the '(appropriate Department, Board, or Agency) Special Mineral Fund', which funds are hereby created, and shall be used exclusively for the benefit of the appropriate Department, Board, or Agency; provided, however, no money shall ever be expended from these funds except by legislative appropriation and then for the purposes and in the amounts stated in the Act appropriating same." The Act also repealed all laws or parts of laws in conflict therewith.

Replying to your first question, we are of the opinion that all monies received after June 2, 1951, should be deposited to the credit of the Texas Department of Correction's Special Mineral Fund, even though the lease from which the revenue was derived was executed prior to the effective date of Article 5382d. The provision in Article 6203a for royalties to be paid to the General Land Office for benefit of the General Revenue Fund, was superseded and consequently nullified as of June 2, 1951, when Article 5382d became operative. It is of no consequence that leases may have been executed prior to that date since some monies were received therefrom after this Act became effective.

As to your second question, it is our opinion that all revenue from leases made after June 2, 1951, at which time Article 5382d became effective, should properly be credited to the Texas Department of Correction's Special Mineral Fund as authorized by that Act. In that connection, we are informed that $15,882.53 has been paid on a lease made December 12, 1952, and that $61,062.69 of royalties has been paid on a lease made December 28, 1951. These royalties have been deposited to the credit of the General Revenue Fund rather that the Special Mineral Fund of the Texas Department of Corrections, even though both leases were executed after Article 5382d went into effect. While these monies should properly have been credited to the Special Mineral Fund of the Texas Department of Corrections, you are advised that monies may not be withdrawn from the General Revenue Fund and placed in another fund in order to rectify a previous bookkeeping error, or for any other reason, except upon specific direction of the Legislature. Constitution of Texas, Article 8, Section 6; Manion v. Lockhart, 131 Tex. 175,

114 S.W. 2d 216; Attorney General's opinions No. 0-108 and 0-44. Copies of these opinions are attached.

## SUMMARY

Royalties and rentals paid after June 2, 1951, being the effective date of Article 5382d, Vernon's Civil Statutes, on leases which were executed prior to that date, should properly be credited to the Texas Department of Correction's Special Mineral Fund. All revenue received from leases which were executed after June 2, 1951, should be credited to the Texas Department of Correction's Special Mineral Fund; however, revenue which has been received on leases of Texas prison lands, irrespective of whether the lease was exectued before or after June 2, 1951, and which funds have been erroneously deposited to the account of the General Revenue Fund may not be withdrawn or transferred to the Special Mineral Fund except upon specific direction of the Legislature.

Very truly yours,

WILL WILSON

By B. H. Timmins, Jr.
Assistant

BHT:jh

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

John Reeves
L. P. Lollar
Ray V. Loftin
J. Arthur Sandlin

REVIEWED FOR THE ATTORNEY GENERAL
BY: Morgan Nesbitt