**Ex parte CITY OF IRVING, Texas.**

No. 05–11–00036–CV.

Court of Appeals of Texas, Dallas.

May 20, 2011.

Rehearing Overruled June 29, 2011.

David C. Mattax, Director of Defense Litigation, Financial Litigation Division, Jennifer Settle Jackson, Office of Attorney General, Financial Litigation Division, and David J. Schenck, Office of Attorney General, Austin, for Appellant.

Mikel J. Bowers, Bell, Nunnally & Martin LLP, Michael L. Raiff, Gibson, Dunn & Crutcher LLP, E. Ray Hutchison, Robert R. Collins, III, Vinson & Elkins, L.L.P., James B. Harris, Richard B. Phillips, Jr., Thompson & Knight, L.L.P., Frank L. Branson, Eric T. Stahl, Law Offices of Frank L. Branson, P.C., Dallas, Clay Lewis Jenkins, Jenkins & Jenkins, P.C., Waxahachie, Charles R. Anderson, City Attorney, Office of City of Irving, John F. Boyle, Boyle & Lowery, L.L.P., Irving, Robert D. Martinez, Cotton Schmidt & Abbott, LLP, Fort Worth, Edward D. Burbach, Karen Bailey Pettigrew, Assistant Attorney General, Financial Litigation Division, Austin, for Appellee.

Christopher D. Bowers, Assistant City Attorney, Barbara E. Rosenberg, City of Dallas Attorney's Office, Dallas, Robert G. Newman, Rosemarie Kanusky, Fulbright & Jaworski, L.L.P., Michael D. Bernard, City Attorney, Thomas K. Spurgeon, McCall, Parkhurst & Horton, L.L.P., San Antonio, for Other Interested Party.

Before Justices O'NEILL, LANG, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

The Attorney General of Texas appeals from the final judgment in a declaratory judgment action filed by the City of Irving, Texas pursuant to chapter 1205 of the government code relating to the issuance of public securities. *See* TEX. GOV'T CODE ANN. §§ 1205.001–.152 (West 2000). We affirm in part and reverse in part and remand.

## BACKGROUND

The City adopted a capital improvement plan for the expansion of its convention center. The plan includes the construction of an entertainment center and hotel. The City proposes to issue three series of municipal bonds in a total amount not to exceed $200 million to fund the construction of the project. *See id.* §§ 1371.001–.106 (West 2000 & Supp. 2009). Among the revenue sources the City proposes to pledge to secure payment of the bonds are rebates of taxes that will be collected from within the project after it is opened for initial occupancy: state sales, use, and hotel occupancy taxes, and the State's portion and the City's portion of the mixed beverage taxes.

In this action, the City sought a declaratory judgment stating that, among other things, the City has the authority to issue the public securities, the public securities are legal and valid, and the proposed pledges of revenues are legal and valid. The Attorney General, as a necessary party to the declaratory judgment action, *see id.* § 1205.042, objected to the approval of the City's proposal because it did not include a statement that these revenue sources were subject to biennial appropriation by the legislature. He also objected to the City's proposal to pledge the State's portion of the mixed beverage taxes arguing that the City had no authority to pledge those taxes.

The trial court found in favor of the City and issued a final judgment validating the City's proposal to pledge the various revenue sources to secure payment of the bonds.[1] The trial court also issued findings of fact and conclusions of law. On appeal, the Attorney General challenges those conclusions and contends that the trial court erred by ruling that (1) the taxes pledged by the City to fund the project are not subject to biennial appropriation by the state legislature and (2) the government code authorized the City to pledge the State's portion of the mixed beverage taxes.[2]

## STANDARD OF REVIEW AND APPLICABLE LAW

The Attorney General's two issues involve matters of statutory construction, which we review de novo. *See City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 357 (Tex.2000). Our primary objective in construing statutes is to give effect to the legislature's intent. *Galbraith Eng'g Consultants, Inc. v. Pochucha,* 290 S.W.3d 863, 867 (Tex.2009). The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd results. *See City of Rockwall v. Hughes,* 246 S.W.3d 621, 625–26 (Tex.2008); *see also Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 866 (Tex. 1999) ("[I]t is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be

---

1. A group of taxpayers who opposed the issuance of the bonds and who intervened in the City's declaratory judgment action also filed a notice of appeal in this case. However, the trial court dismissed their intervention and we affirmed the dismissal in an earlier interlocutory appeal. *See Putnam v. City of Irving,* 331 S.W.3d 869, 872 (Tex.App.-Dallas 2011, pet. filed). We do not consider the issues raised in their appellate brief because they are not properly before this Court.

2. The City contends that the Attorney General did not preserve these issues for our review. However, the trial court held a hearing and rendered findings of fact and conclusions of law on these issues. We conclude that the issues were, at the very least, tried by consent. *See* TEX.R. CIV. P. 67.

the surest guide to legislative intent."). In construing a statute, we may consider the objective of the statute, its legislative history, and the consequences of a proposed construction. TEX. GOV'T CODE ANN. § 311.023(1), (3), (5) (West 2005).

## BIENNIAL APPROPRIATION

In his first issue, the Attorney General argues that the trial court erred by concluding that the state taxes and the City's portion of the mixed beverage taxes are not subject to biennial appropriation.[3] The Attorney General argues that because these taxes are required to be deposited into the general revenue fund, and because the Texas Constitution prohibits appropriations from the treasury for more than two years, the City's proposal to pledge these revenues for 10 years is unconstitutional. The City argues that the project falls within a constitutional exception to the biennial appropriation requirement. We agree with the City.

### State Sales, Use, and Hotel Occupancy Taxes

We first address the Attorney General's contention in his first issue that the state sales, use, and hotel occupancy taxes are subject to biennial appropriation. We address his contention in his first issue that the mixed beverage taxes are subject to biennial appropriation later in this opinion.

It is undisputed that the law requires the state sales, use, and hotel occupancy taxes to be deposited into the State's general revenue fund. *See* TEX. TAX CODE ANN. §§ 151.801 (state sales and use taxes), 156.251(a) (state hotel occupancy taxes) (West 2008). It is also undisputed that the law allows the City to pledge these taxes for the first 10 years after the hotel is open for initial occupancy. *See id.*

§ 151.429(h) (stating tax rebates to which owner of qualified hotel project is entitled for first 10 years); § 351.102(c) (West Supp. 2010) (stating municipality may pledge funds described in section 151.429(h)). But the Attorney General argues that "any pledge of the funds must be contingent on a legislative appropriation." He cites article VIII, section 6 of the Texas Constitution, which states: "No money shall be drawn from the Treasury but in pursuance of specific appropriations made by law; nor shall any appropriation of money be made for a longer term than two years." TEX. CONST. art. VIII, § 6.

The City argues that article III, section 52–a of the Texas Constitution is an exception to the biennial appropriation requirement and that its project falls within that exception. The parties do not dispute that section 52–a exempts section 52–a programs from the biennial appropriation requirement of article VIII, section 6; they dispute only whether section 52–a applies here.

Section 52–a provides in relevant part:

### § 52–a. Assistance to encourage state economic development

Sec. 52–a. Notwithstanding any other provision of this constitution, the legislature may provide for the creation of programs and the making of loans and grants of public money, other than money otherwise dedicated by this constitution to use for a different purpose, for the public purposes of development and diversification of the ˅economy of the state, . . . .

*Id.* art. III, § 52–a.

 As the Attorney General has stated in the past, section 52–a was passed in

---

**3.** The Attorney General specifically challenges the trial court's conclusion of law number two that "the City's receipt of the State Project Taxes and the City's portion of the mixed beverage taxes is not subject to biennial appropriation by the legislature."

1987 and created an exception to the constitutional prohibition on the lending of public credit by providing that programs fostering economic growth serve a public purpose. TEX. ATT'Y GEN. OP. No. JC–0092, at 6, 8 (1999). Section 52–a "permits the legislature to enact legislation providing for economic development." *Id.;* TEX. CONST. art. III, § 52–a. He has also stated that section 52–a is a broad authorization to create programs to promote economic development, and that it does not specify what the program must be as long as the program serves the purpose of encouraging economic development. TEX. ATT'Y GEN. OP. No. GA–0529, at 2 (2007).

■ The Attorney General argues that section 52–a does not apply here because the taxes at issue in this case are deposited into the State's general revenue fund and section 52–a applies only to funds that are held in trust by the comptroller and have not been deposited into the general revenue fund. We disagree. The Texas Supreme Court has held that when funds are held in trust, they are not considered part of the general revenue fund. *See Friedman v. Am. Surety Co. of New York,* 137 Tex. 149, 151 S.W.2d 570, 576, 578–80 (1941) (excepting funds held in trust from appropriations limitation); *Manion v. Lockhart,* 131 Tex. 175, 114 S.W.2d 216, 218–19 (1938) (same). These cases were decided well before the section 52–a amendment was passed in 1987. Because funds held in trust by the comptroller are not deposited into the general revenue fund, there would be no reason to adopt a constitutional amendment exempting those funds from biennial appropriation. *See Friedman,* 151 S.W.2d at 576, 578–80; *Manion,* 114 S.W.2d at 218–19. Instead, we conclude that section 52–a was passed to provide an exception to the biennial appropriation requirement for funds that are held in the general revenue fund and that meet section 52–a's requirement for programs to encourage economic development in the state. *See* TEX. CONST. art. III, § 52–a; *Friedman,* 151 S.W.2d at 578–80; *Manion,* 114 S.W.2d at 218–19.

■ The Attorney General also contends that section 52–a does not apply here because the legislation must expressly invoke section 52–a or "expressly authorize either the extension of the State's credit or a governmental economic development program that will make loans or grants" and that none of the statutes at issue here do so. We do not agree that the enabling legislation must expressly refer to section 52–a as long as it is clear that the legislature created the program with the intent to encourage economic development. Additionally, section 52–a states that "the legislature may provide for the creation of programs *and* the making of loans and grants of public money . . . for the public purposes of development and diversification of the economy of the state. . . ." TEX. CONST. art. III, § 52–a (emphasis added). It does not state that the economic development program has to make loans or grants of public money, as the Attorney General contends. *See id.*

Acting under its authority in section 52–a, the legislature has enacted statutes that created programs to encourage economic development by offering, among other things, tax incentives to eligible municipalities. For example, in enacting the Texas Enterprise Zone Act, a statute applicable to this case, the legislature saw a need to encourage the development, growth, and expansion of the private sector within depressed urban and rural areas of the state.[4] Act of May 26, 1983, 68th Leg.,

---

4. The Texas Enterprise Zone Act states that its purposes are to establish a process that clearly identifies severely distressed areas of the state

R.S., ch. 841, § 1, 1983 TEX. GEN. LAWS 4771, 4771–72 (current version at TEX. GOV'T CODE §§ 2303.001–.517 (West 2008 & Supp. 2010)). The Texas Enterprise Zone Act authorized exemptions from certain local taxes and also offered state regulatory incentives. *See id.* at 4781–82. In 1987, the legislature amended the Texas Enterprise Zone Act to include rebates of state sales and use taxes. Act of May 31, 1987, 70th Leg., R.S., ch. 765, § 1, 1987 TEX. GEN. LAWS 2720, 2720. In 1993, the legislature again amended the Texas Enterprise Zone Act and expanded it to include a "qualified hotel project" and a rebate of 100% of the state sales, use, and hotel occupancy taxes to the owner of a qualified hotel project for the first seven years after the hotel project is open for initial occupancy. Act of May 11, 1993, 73d Leg., R.S., ch. 231, §§ 6, 10, 1993 TEX. GEN. LAWS 480, 482–83. Two years later, the legislature expanded the rebate from the first seven years to the first ten years after the qualified hotel project is open for initial occupancy. Act of May 19, 1995, 74th Leg., R.S., ch. 977 § 1, 1995 TEX. GEN. LAWS 4867, 4868. *See* GOV'T § 2303.003(8); TAX § 151.429(h).

One of the purposes of the Texas Enterprise Zone Act, as expressly stated in the statute, is to "induce private investment ... by removing unnecessary governmental regulatory barriers to economic growth and to provide tax incentives and economic development program benefits." GOV'T § 2303.002. And a "qualified hotel project" falls within the Texas Enterprise Zone Act. *Id.* § 2303.003(8).

The legislature sought to encourage economic development when it enacted similar statutes that provide tax rebates to municipalities and authorized municipalities to pledge those tax rebates to secure payment of bonds. *See* TAX §§ 151.429 ("Tax Refunds for Enterprise Projects"); 351.102 ("Pledge for Bonds"). And the legislature used mandatory language in the legislation, such as "an enterprise project is entitled to (1) a refund of state taxes ...." and "the owner of a qualified hotel project shall receive a rebate...." *See* GOV'T § 2303.504(a)(1) ("entitled to"); TAX § 151.429(h) ("shall receive"). The plain language of the statutes indicate that the legislature intended eligible municipalities to have the benefit of the state tax rebates for well over two years, and the use of mandatory language reflects the legislature's intent that the rebates were not subject to biennial appropriation.

▮ For these reasons, we conclude that section 52–a does apply here and that the legislature was not limited by article VIII, section 6 when it created an economic development program for qualified hotel projects and authorized the rebate of certain state taxes for a period of 10 years. *See Harris Cnty. Flood Control Dist. v. Mann,* 135 Tex. 239, 140 S.W.2d 1098, 1103 (1940); *Brazos River Conservation & Reclamation Dist. v. McCraw,* 126 Tex. 506, 91 S.W.2d 665, 673–74 (1936); *City of Aransas Pass v. Keeling,* 112 Tex. 339, 247 S.W. 818, 819–21 (1923); TEX. ATT'Y GEN. LA–132, at 3 (1977). Interpreting the statutes in this way, and in accordance with the plain language of the Texas Enterprise Zone Act and the other statutes applicable to this matter, supports the legislature's purpose in enacting the statutes to encourage economic development.[5]

and provides incentives by state and local government to induce private investment in those areas by removing unnecessary governmental regulatory barriers to economic growth and to provide tax incentives and economic development program benefits. GOV'T § 2303.002.

5. The Court received two amicus briefs supporting the City's position on the issue of

Consequently, we conclude that the trial court did not err by concluding that the City's pledge of the state sales, use, and hotel occupancy taxes are not subject to biennial appropriation by the legislature. We resolve this subpart of issue one against the Attorney General.

### City's Portion of Mixed Beverage Taxes

The Attorney General makes two arguments about the City's proposal to pledge the mixed beverage taxes. The first argument was raised as a subpart of his first issue concerning biennial appropriation and we address it now. We will address the second argument separately.

■ The legislature established a 14% state tax on mixed beverages and authorized the comptroller to refund up to 10.7143% of that amount to the municipalities and counties from which the taxes were collected. *See* Tax § 183.051(b). The Attorney General contends that the City's portion of the mixed beverage taxes is subject to biennial appropriation by the legislature because the statute expressly contains appropriation language:

> (b) The comptroller shall issue to each . . . incorporated municipality described in Subsection (a) a warrant drawn on [the general revenue] fund in an amount appropriated by the legislature that may not be greater than 10.7143 percent of receipts from permittees within the incorporated municipality during the quarter.

*Id.* He contends that the language, "in an amount appropriated by the legislature" means that the mixed beverage tax refund is subject to the two-year appropriation requirement. Even if the language could be interpreted in this way, we nevertheless

conclude that when a municipality chooses to pledge its portion of the mixed beverage taxes to secure payment of bonds for a qualified hotel project, the refund is not subject to the biennial appropriation requirement for the same reasons that we previously concluded the state sales, use, and hotel occupancy taxes were not subject to biennial appropriation. We resolve this subpart of issue one against the Attorney General.

In summary, we conclude that the trial court did not err by concluding that the state sales, use, and hotel occupancy taxes, and the City's portion of the mixed beverage taxes are not subject to biennial appropriation. We turn now to the Attorney General's second argument concerning the mixed beverage taxes.

### State's Portion of Mixed Beverage Taxes

In issue two, the Attorney General contends that the City's proposal to pledge the State's portion of the mixed beverage taxes is not authorized by statute. He argues that the trial court erred by concluding that "the State is a 'governmental body' within the meaning of Section 2303.5055(a) of the Texas Government Code" and by impliedly concluding that section 2303.5055 authorizes the City to pledge the State's portion of the mixed beverage taxes.[6]

As we just explained, the State imposes a 14% tax on mixed beverages and refunds to a municipality up to 10.7143% of the amount of taxes collected from within that municipality. Tax § 183.021, .051(b). The City proposes to pledge both its refunded portion and the State's portion of the mixed beverage taxes to secure payment

biennial appropriation. Each argued that the Attorney General's position on this issue is contrary to the position he took in their cases.

6. This issue challenges the trial court's conclusion of law number one.

of the bonds. It cites section 2303.5055 of the government code as its authority to pledge the State's portion of the mixed beverage tax revenue:

(a) For a period that may not exceed 10 years, a governmental body, including a municipality, county, or political subdivision, may agree to rebate, refund, or pay eligible taxable proceeds to the owner of a qualified hotel project at which the eligible taxable proceeds were generated.

. . .

(e) In this section, "eligible taxable proceeds" means taxable proceeds generated, paid, or collected by a qualified hotel project . . . including hotel occupancy taxes, ad valorem taxes, sales and use taxes, and mixed beverage taxes.

Gov't § 2303.5055(a), (e). The trial court agreed with the City and the final judgment validated the City's proposal to pledge the State's portion of the mixed beverage taxes.

The Attorney General argues that "governmental body" as used in this statute does not include the State, but even if it did, "[t]he State cannot assign local tax revenues, and local governmental entities cannot assign state tax revenues." We agree. Unlike other statutory provisions at issue in this case that state the City is "entitled to" or "shall receive" certain tax rebates, section 2303.5055 states that a governmental body "may agree" to refund the eligible taxable proceeds to the "owner of a qualified hotel project." *Id.* § 2303.5055(a). Even if we were to decide that "governmental body" includes the State, section 2303.5055 cannot be interpreted to permit one governmental body, such as a municipality, to make an agreement on behalf of another governmental body, such as the State. *See id.* But we do not need to decide whether "govern-

mental body" includes the State for purposes of this statute.

The Attorney General also argues that, even if "governmental body" includes the State, the City did not offer any evidence that the State agreed to refund its portion of the mixed beverage taxes to the City. Again, we agree. The statute states that the agreement between the governmental body (in this case the State if we presume that "governmental body" includes the State) and the owner of a qualified hotel project (in this case the City) must be in writing. *Id.* § 2303.5055(c). There is no evidence in the record that shows the State agreed to refund its portion of the mixed beverage taxes to the City. Consequently, the trial court erred by concluding that the City was entitled to pledge the State's portion of the mixed beverage taxes.

We resolve issue two in the Attorney General's favor.

### Conclusion

We reverse that portion of the judgment validating the State's portion of the mixed beverage taxes as a valid revenue source which the City may pledge to secure payment of the bonds. In all other respects, the trial court's judgment is affirmed. We remand this cause to the trial court for further proceedings consistent with this opinion.