

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00336-CV

_____

IN RE KENT KADDATZ, Relator

---

Original Proceeding
43rd District Court of Parker County, Texas
Trial Court No. CV23-0960

---

Before Sudderth, C.J.; Birdwell and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

Relator Kent Kaddatz seeks mandamus relief from the trial court's order compelling him to submit to a pre-suit deposition under Texas Rule of Civil Procedure 202. *See* Tex. R. Civ. P. 202.1 (permitting a person to petition a court for authorization to take a deposition to perpetuate or obtain testimony for use in an anticipated suit or to investigate a potential legal claim or suit). Because the trial court clearly abused its discretion and because Kaddatz lacks an adequate remedy by appeal, we conditionally grant mandamus relief.

## I. Background

Real party in interest Oil Patch Group, Inc. (OPG) alleges that its president Derek Elzner formed a competing company named Titan Accommodations, LLC while he was working for OPG and then suddenly resigned. Shortly after Elzner resigned, several other OPG employees—including Kaddatz—followed suit, and OPG alleges that these individuals now work for Titan.

OPG sued Titan, Elzner, and Dwayne Beran (another former OPG employee) in federal court for various claims arising from alleged employment agreement violations and unauthorized use of the company's trade secrets and confidential information (the Titan Lawsuit). In the lawsuit, OPG asserted claims for breach of contract, conversion, breach of fiduciary duties, knowing participation in breach of fiduciary duties, tortious interference with business relationships and contracts, civil

conspiracy, and violations of the Federal Defend Trade Secrets Act, the Texas Uniform Trade Secrets Act, and the Computer Fraud and Abuse Act.

Although Kaddatz is not a named defendant in that case, he is identified in the complaint as among seven OPG employees who allegedly resigned, joined Titan, and "deleted a large number of emails from their OPG email accounts around the time of [their] resignations." OPG has also filed two other federal cases against former employees Lenae Beran[1] and Danette Mares. According to the mandamus record, all three federal cases are still active.

On the same day that it filed the federal complaints, OPG filed a verified Rule 202 petition in the state district court below seeking Kaddatz's pre-suit deposition and document production.[2] Kaddatz filed objections to the petition, asserting that OPG had failed to establish that the benefit of allowing the deposition outweighed Kaddatz's burden. *See* Tex. R. Civ. P. 202.4(a)(2) (requiring petitioner to plead and prove "the likely benefit of allowing [it] to take the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure"). More specifically, citing

---

[1]Because two former OPG employees—Dwayne Beran and Lenae Beran—share the same last name, we will hereinafter refer to them by their first names.

[2]The petition sought documents from Kaddatz concerning his possession or transmission of confidential materials and Titan's use of the same; Kaddatz's employment with Titan; Kaddatz's communication with Elzner, Dwayne, Lenae, or Mares in the months before his resignation from OPG; and communications with current or former OPG customers. Although Kaddatz objected below to these document requests, the requests are not included in the issue presented in his mandamus petition. Thus, we will not address them.

3

our holding in *DeAngelis v. Protective Parents Coalition*, Kaddatz asserted that the petition was insufficient to meet Rule 202's requirements because it "merely parrot[ed] the language of Rule 202 without including explanatory facts [or] providing evidence." *See* 556 S.W.3d 836, 855 (Tex. App.—Fort Worth 2018, no pet.) ("A petitioner seeking pre-suit discovery under Rule 202 must present evidence to meet its burden to establish the facts necessary to obtain such discovery."). He further asserted that OPG had failed to properly assess his burden and expense, noting that the Third Court of Appeals has held in *In re Hewlett Packard*, that former employees carry a "substantial burden" when submitting to a deposition with their former employer regarding why they left to work for a competitor and what they are doing for their new employer, "particularly when no lawsuit has been filed." *See In re Hewlett Packard*, 212 S.W.3d 356, 362 (Tex. App.—Austin 2006, orig. proceeding [mand. denied]) (requiring an individual to "disclose information to a former employer, under oath, as to why he or she left their employ to work for a competitor as well as exactly what the individual is doing for the competitor, particularly when no lawsuit has been filed, is a substantial burden"). Kaddatz also asserted that OPG could have sought the same discovery from him in any of its three federal cases against Titan and OPG's former employees. Thus, Kaddatz postulated that the Rule 202 petition was merely an attempt to circumvent federal-court procedure.

OPG responded, arguing that because the parties had tentatively agreed on deposition terms (which Kaddatz later rejected), Kaddatz could not show that the deposition was a substantial burden. To support its argument on the question of

4

burden, OPG included an exhibit reflecting an email from OPG's counsel to Kaddatz's counsel containing OPG's proposed deposition terms (the Deposition-Terms Email).

Regarding its need for pre-suit discovery, OPG's response pointed to an email from Lenae to Dwayne and Mares containing a Titan expense report that used a form that was allegedly misappropriated from OPG (the Expense-Report Email). The Expense-Report Email was attached to the Rule 202 petition and is the basis for most of the claims asserted in the Titan Lawsuit. OPG acknowledged that it "certainly could sue [Kaddatz] directly [and] then depose [him] in *both* that lawsuit (*and* in the Pending [Titan Lawsuit])[,] [b]ut that is not what OPG is trying to do." Instead, according to OPG, it did not want to sue Kaddatz until it had "cognizable claims against him."

While neither side offered any evidence at the Rule 202 petition hearing, the petition, the Expense-Report Email, and the Deposition-Terms Email were discussed. At the hearing, OPG offered two primary arguments: (1) that while OPG could file suit against Kaddatz, it preferred to wait to do so until it had investigated the potential claims, and (2) that Kaddatz's burden was low because "he knows, and [he has] conceded, [that] he could be deposed in another case." The trial court took the petition under advisement, indicating that it would review Rule 202 and compare it to the Expense-Report Email before ruling.

After its review, the trial court granted the petition and ordered Kaddatz's deposition, limiting the deposition to two hours. Additionally, the trial court ordered that OPG stipulate that the time used for the deposition would be subtracted from the

time permitted under the Federal Rules of Civil Procedure for any subsequent depositions of Kaddatz that were taken "in the lawsuit currently pending in federal court between [OPG] and Derek Elzner, Dwayne Beran, and Titan Accommodations, LLC." This mandamus proceeding followed, and the trial court granted Kaddatz's motion to stay the proceedings pending the outcome of this original proceeding.

## II. Discussion

Kaddatz contends that the trial court clearly abused its discretion by granting the Rule 202 petition because OPG failed to "meaningfully explain" its need for pre-suit discovery and failed to introduce competent evidence to support its petition. Alternatively, Kaddatz argues that even if OPG's petition and exhibits are considered as evidence, they fail to prove that pre-suit discovery is necessary. Finally, Kaddatz also asserts that he has no remedy by appeal from the trial court's order because the opportunity to appeal would come only after the deposition had occurred.

### A. Mandamus Standard

Mandamus relief is an extraordinary remedy. *In re Acad., Ltd.*, 625 S.W.3d 19, 25 (Tex. 2021) (orig. proceeding). The party seeking mandamus relief must show both that the trial court clearly abused its discretion and that the party has no adequate remedy by appeal. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 875 (Tex. 2021) (orig. proceeding).

A trial court abuses its discretion when a decision is arbitrary, unreasonable, and without reference to guiding principles. *Id.*; *see Walker v. Packer*, 827 S.W.2d 833, 839–

6

40 (Tex. 1992) (orig. proceeding). We defer to a trial court's factual determinations that have evidentiary support, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). An error of law or an erroneous application of the law to the facts is always an abuse of discretion. *See In re Geomet Recycling LLC*, 578 S.W.3d 82, 91–92 (Tex. 2019) (orig. proceeding).

An appellate remedy's adequacy has no specific definition; "the term is 'a proxy for the careful balance of jurisprudential considerations' [that implicate both public and private interests,] and its meaning 'depends heavily on the circumstances presented.'" *Allstate Indem. Co.*, 622 S.W.3d at 883 (quoting *In re Prudential Ins. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding)); *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (quoting *Prudential*, 148 S.W.3d at 136); *see also In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding) ("Whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of costs and benefits of interlocutory review.").

An appellate remedy is adequate when any benefits to mandamus review are outweighed by the detriments. *Prudential*, 148 S.W.3d at 136. But even when the benefits of mandamus review outweigh the detriments, we must consider whether the appellate remedy is nonetheless adequate. *Id.* In evaluating the benefits and detriments, we consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008)

7

(orig. proceeding). The danger of permanently losing substantial rights occurs when the appellate court would not be able to cure the error, when the party's ability to present a viable claim or defense is vitiated, or when the error cannot be made a part of the appellate record. *ERCOT, Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 641 (Tex. 2021) (orig. proceeding) (citing *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 211 (Tex. 2004) (orig. proceeding)). We should also consider whether mandamus will allow us "to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments" and "whether mandamus will spare litigants and the public 'the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'" *Team Rocket*, 256 S.W.3d at 262 (quoting *Prudential*, 148 S.W.3d at 136).

An order allowing a pre-suit deposition of an anticipated defendant under Rule 202, as here, is not a final, appealable order. *In re Jorden*, 249 S.W.3d 416, 419 (Tex. 2008) (orig. proceeding). Thus, mandamus is the proper method to challenge such an order. *In re Campos*, No. 2-07-197-CV, 2007 WL 2013057, at *3 (Tex. App.—Fort Worth July 12, 2007, orig. proceeding [mand. denied]) (per curiam) (citing *Hewlett Packard*, 212 S.W.3d at 360).

## B. Applicable Law

Rule 202 authorizes pre-suit depositions in two circumstances: (1) "to perpetuate or obtain the person's own testimony or that of any other person for use in an anticipated suit" or (2) "to investigate a potential claim or suit." Tex. R. Civ. P. 202.1;

8

*DeAngelis*, 556 S.W.3d at 853. But, as the Texas Supreme Court has pointed out, "[t]he intrusion into otherwise private matters authorized by Rule 202 outside a lawsuit is not to be taken lightly." *In re Does*, 337 S.W.3d 862, 865 (Tex. 2011) (per curiam) (orig. proceeding). And as we have noted, "Rule 202 depositions are not now and never have been intended for routine use. There are practical as well as due process problems with demanding discovery from someone before telling them what the issues are." *DeAngelis*, 556 S.W.3d at 855 (quoting *Jorden*, 249 S.W.3d at 423). The supreme court has further cautioned that courts must "strictly limit and carefully supervise pre-suit discovery to prevent abuse of the rule." *In re Wolfe*, 341 S.W.3d 932, 933 (Tex. 2011) (per curiam) (orig. proceeding) (quoting Tex. R. Civ. P. 202.5).

As to pleading, while Rule 202 does not require the pleading of a specific cause of action, it does require that the petitioner "state the subject matter of the anticipated action, if any, and the petitioner's interest therein." *DeAngelis*, 556 S.W.3d at 853. A Rule 202 petition that "merely tracks the language of Rule 202 in averring the necessity of a pre-suit deposition, without including any explanatory facts," will not suffice to meet the petitioner's burden. *Id.* at 856 (quoting *In re East*, 476 S.W.3d 61, 69 (Tex. App.—Corpus Christi–Edinburg 2014, orig. proceeding)); *see also Does*, 337 S.W.3d at 865 (concluding that petitioner's "sketchy" allegations mostly concerning a third party "made no effort to present the trial court with a basis for the [Rule 202] findings").

As to proof, a Rule 202 petitioner must provide more than mere allegations to obtain a Rule 202 deposition. *DeAngelis*, 556 S.W.3d at 855. The petitioner must

9

"present evidence to meet its burden to establish the facts necessary to obtain such discovery." *Id.* And, because pleadings—even if sworn or verified—are not generally considered competent evidence, *Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995), we have held that ordinarily a Rule 202 petitioner cannot rely upon a verified pleading to meet its burden of proving the facts asserted in its petition. *DeAngelis*, 556 S.W.3d at 855–56.

## C. Analysis

Because OPG sought Kaddatz's deposition to investigate a potential claim or suit, *see* Tex. R. Civ. P. 202.1(b), OPG had to both plead and prove that "the likely benefit of allowing [it] to take the requested deposition to investigate a potential claim outweigh[ed] the burden or expense of the procedure," *see* Tex. R. Civ. P. 202.4(a)(2). Kaddatz contends not only that OPG failed in its pleadings and proof but also that Rule 202 relief is inappropriate here because OPG can obtain the same discovery in any of its pending federal cases.

### 1. OPG's Rule 202 Petition

According to Kaddatz, OPG's petition merely tracked Rule 202's language and included no factual allegations to explain "why it is so important that OPG seek *pre-suit* discovery" from Kaddatz. With regard to potential claims and the need for pre-suit discovery, OPG's petition contains the following relevant allegations:

- Elzner suddenly resigned from OPG;

10

- Elzner had registered "a new and directly competing company, Titan Accommodations, LLC," two months before his resignation;

- OPG has lost at least two customers to Titan, "representing millions in annual revenue to OPG";

- before his resignation, Elzner "attempted to surreptitiously and improperly 'terminate' his employment agreement along with other employees' employment agreements";

- the employment agreements contained "restrictive covenants and nondisclosure obligations";

- two days after Elzner resigned, Kaddatz and "at least seven other OPG managers and employees known to be close to Elzner" resigned;

- OPG believes that all of the former employees who resigned shortly after Elzner now work for Titan;

- OPG has evidence in the form of the Expense-Report Email demonstrating that its former employees are misappropriating OPG's confidential information; and

- the Titan expense reports "are almost identical to the confidential expense reports used by OPG, which Elzner, Lenae, [Dwayne], and Mares would have had access to and used as key employees of OPG."

OPG further asserted in its petition that it sought pre-suit discovery to explore Kaddatz's role in the former employees' resignations and Titan's formation and use of OPG's "trade secrets, confidential information, and property" and to determine whether it has any legal claims against Kaddatz, including breach of fiduciary duty and

violations of the Federal Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act.[3]

Although OPG's petition explains the basis for OPG's potential claims against Kaddatz, it does not explain why OPG needs Kaddatz's *pre-suit* deposition. *See DeAngelis*, 556 S.W.3d at 856. In fact, OPG's petition contains no factual allegations concerning Rule 202's requirements at all. *See* Tex. R. Civ. P. 202.4(a)(2); *Does*, 337 S.W.3d at 865; *DeAngelis*, 556 S.W.3d at 856.

Addressing the burden or expense of the Rule 202 deposition request, *see* Tex. R. Civ. P. 202.4(a)(2) (permitting pre-suit depositions "if, but only if" the trial court finds that "the likely benefit of allowing the petitioner to take the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure"), OPG's petition asserts:

- "The benefit of allowing OPG to conduct the requested oral deposition duces tecum to investigate potential claims outweighs the burden or expense of authorizing the deposition of [Kaddatz], who will have specific knowledge regarding OPG's specific and potential claims against [Kaddatz]";

- "[T]he burden or expense of allowing the requested Rule 202 deposition to take place and production of documents is low, as [Kaddatz] resides in Parker County and OPG's counsel will work with [Kaddatz] to schedule the deposition at a mutually convenient time and place"; and

---

[3]OPG also filed identical petitions seeking Rule 202 depositions from the remaining four former employees identified in the Titan Lawsuit.

12

- OPG "will conduct the requested deposition within the time and other limitations as set forth in the Texas Rules of Civil Procedure."

These conclusory assertions merely track the language of Rule 202, *see* Tex. R. Civ. P. 202.1, 202.4, and concede no more than is required under our discovery rules, *see* Tex. R. Civ. P. 202.5 ("The scope of discovery in depositions authorized by this rule is the same as if the . . . potential claim had been filed."); *id.* 199.2(b)(2) (requiring oral depositions to take place at a reasonable time and place, such as the county in which the deponent resides). On its face, the petition is insufficient to demonstrate a need for pre-suit discovery. *See DeAngelis*, 556 S.W.3d at 856; *Hewlett Packard*, 212 S.W.3d at 362 (holding that the benefit of determining whether petitioner has a legitimate claim against respondent is not sufficient alone to outweigh the burden on potential deponent).

## 2. OPG's Rule 202 Evidence

As to his contention that OPG failed to offer any evidence to support its petition, Kaddatz points out that OPG relied solely on its verified petition, the Expense-Report Email, and the Deposition-Terms Email—none of which were offered into evidence at the Rule 202 petition hearing.

OPG responds that Rule 202 "says nothing about the form of the evidentiary proof required" and that "it would be strange" to hold that a verified petition could not support a Rule 202 deposition when a declaration is sufficient to support a temporary restraining order or summary judgment. Moreover, according to OPG, Kaddatz waived

the admissibility issue by failing to object and commenting on the weight of the evidence.

Notably, however, OPG asserts only that Kaddatz failed to object "when OPG clearly tendered [the Expense-Report Email] to the trial court as evidence." OPG does not contend that Kaddatz waived the admissibility of the petition or the Deposition-Terms Email. Nor does it assert that its counsel tendered the Expense-Report Email based on personal knowledge of the same. *See In re Estate of Arndt*, 187 S.W.3d 84, 87 (Tex. App.—Beaumont 2005, orig. proceeding) (holding that trial court could rely on counsels' representations regarding timeliness of discovery responses as factual matters within their personal knowledge because "[u]nsworn factual statements and representations by an attorney can constitute evidence" when opponent fails to object "in circumstances that clearly indicated each was tendering evidence on the record based on personal knowledge on the contested issues" (internal quotation omitted)).

Although OPG admits that it did not formally offer any evidence at the hearing, it contends that it handed over, and the trial court considered, its verified petition and the two exhibits by reference. OPG refers us to the trial court's order stating that the trial court based its decision on "the [p]etition, *the evidence*, and any other relevant pleadings and arguments of counsel" as proof that the trial court heard and considered evidence when making its determination. Even if we hold otherwise, OPG contends that it would be "pointless" for us to grant the petition for writ of mandamus because

14

it will simply use "the magic words 'I hereby move to admit' the evidence" on the next go-round to ensure that its petition and exhibits are formally admitted into evidence.

While courts should not issue mandamus "if for any reason it would be useless or unavailing," this rule applies to circumstances in which the mandamus would compel the respondent to do something that is impossible to do, and the mandamus would be fruitless. *Dow Chem. Co. v. Garcia*, 909 S.W.2d 503, 505 (Tex. 1995) (orig. proceeding) (quoting *Holcombe v. Fowler*, 9 S.W.2d 1028, 1028 (1928) (orig. proceeding)); *see also Manion v. Lockhart*, 114 S.W.2d 216, 219 (1938) (orig. proceeding) (citing *Holcombe*, 118 Tex. at 42, 9 S.W.2d at 1028); *see, e.g., Dow Chem. Co.*, 909 S.W.2d at 504–05 (dismissing mandamus petition as moot because rejoinder of claims requested in mandamus petition was impossible since severed claims had been removed to federal court and could not be resolved in state court); *In re Smith Cnty.*, 521 S.W.3d 447, 454 (Tex. App.—Tyler 2017, orig. proceeding) (denying mandamus as moot because recordings of closed governmental meetings had been published as requested in mandamus petition); *In re Garza*, No. 07-14-00347-CV, 2014 WL 5255162, at *2 (Tex. App.—Amarillo Oct. 14, 2014, orig. proceeding) (mem. op.) (noting that mandamus directing county judge to certify write-in candidate would not place candidate on ballot as requested in mandamus petition because county judge does not prepare ballots); *In re Patton*, No. 06-12-00024-CR, 2012 WL 629153, at *1 (Tex. App.—Texarkana Feb. 28, 2012, orig. proceeding) (mem. op.) (denying mandamus petition seeking order compelling trial court's answer to petition for bill of review because equitable bill of review is unavailable in criminal

15

cases); *In re Charleston*, No. 06-10-00037-CR, 2010 WL 1878690, at *2 (Tex. App.—Texarkana May 12, 2010, orig. proceeding) (mem. op.) (denying mandamus because trial court had taken action requested in mandamus petition).

OPG does not contend that mandamus here would compel the respondent to do something that is impossible to do. Rather, it merely contends that mandamus would be fruitless because OPG would ensure that its petition and exhibits are considered as evidence by formally moving to have them admitted into evidence at a subsequent hearing. But OPG's argument requires a leap of faith that if the evidence were offered, it would be admitted. That is not a forgone conclusion. *See Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) ("The Rules of Evidence govern admissibility of evidence in court proceedings."); *Laidlaw Waste Sys.*, 904 S.W.2d at 660 ("Generally, pleadings are not competent evidence, even if sworn or verified."); *DeAngelis*, 556 S.W.3d at 855 ("Generally, a Rule 202 petitioner may not rely upon its verified pleading to prove the facts asserted in its petition."). Thus, we reject OPG's assertion that mandamus would be futile or pointless. *See Dow Chem. Co.*, 909 S.W.2d at 505.

Regardless, as we explain below, we need not address OPG's theory that the petition and exhibits were informally admitted by reference or properly considered due to Kaddatz's waiver because, even if impliedly admitted into evidence and fully considered by the trial court, OPG's petition and exhibits fall short of addressing the requirements of Rule 202. *See* Tex. R. Civ. P. 202.4(a)(2); *see also DeAngelis*, 556 S.W.3d

16

at 856 (declining to address whether Rule 202 petition can be considered as evidence because petition and exhibits failed to demonstrate need for pre-suit discovery). Thus, even if they were considered by the trial court, OPG would still have failed to offer any evidence to support its Rule 202 petition, and formally offering them as evidence in any subsequent hearing would not remedy that defect.

### a. The Expense-Report Email

According to OPG, the Expense-Report Email "shows the unquestionable theft and use of OPG's Confidential Information by certain Former OPG Employees" and "underscores the significant benefit of obtaining pre-suit discovery from Kaddatz—to ascertain whether Kaddatz was *personally* involved in the conspiracy, whether OPG has viable claims against Kaddatz *personally*, and to prevent further damage to OPG's business due to Kaddatz's potential *personal* conduct."

Although the email and Kaddatz's alleged relationship with those named in it may raise the question of Kaddatz's involvement in the third-party acts that OPG alleges, OPG still fails to explain why it needs *pre-suit* discovery to resolve the question. *See* Tex. R. Civ. P. 202.4(a)(2); *see DeAngelis*, 556 S.W.3d at 857 (holding Rule 202 petitioner's voluminous evidence addressing only the anticipated legal claim did not address "why the benefit of the requested deposition[s] . . . outweigh[ed] the burden or expense of the procedure" (internal quotation marks omitted)); *but cf. In re City of Tatum*, 578 S.W.3d 203, 211 (Tex. App.—Tyler 2019, orig. proceeding) (holding that trial court did not abuse discretion by ordering Rule 202 deposition because it would clarify

17

complex state and federal jurisdictional issues implicated in potential claims and deponent was custodian of records at issue); *Glassdoor, Inc. v. Andra Grp., LP*, 560 S.W.3d 281, 288–93 (Tex. App.—Dallas 2017) (holding that trial court did not abuse its discretion by granting Rule 202 depositions to discover anonymous reviewers' identity based on harm and damages resulting from unfavorable business reviews), *judgment vacated and cause dismissed on other grounds*, 575 S.W.3d 523 (Tex. 2019). OPG's bald assertion that it needs pre-suit discovery to determine whether it has legitimate claims against Kaddatz personally is insufficient to justify the burden of pre-suit discovery. *See Hewlett Packard*, 212 S.W.3d at 362.

### b. The Deposition-Terms Email

OPG contends that the Deposition-Terms Email is "significant evidence demonstrating [that] Kaddatz's claimed substantial burden . . . was disingenuous at best." But although OPG characterizes the email as an "exchange" between the parties, the email reflects only a single communication from OPG to Kaddatz with OPG's "proposal regarding the Rule 202 petitions and prospective depositions," referring to all of the Rule 202 petitions that OPG filed against Kaddatz and four other former employees. OPG offered no evidence of any prior communications to provide context for the proposal. Instead, citing counsels' argument during the hearing, OPG contends that it showed that OPG had agreed to "Kaddatz's proposal" to minimize his deposition burden and that Kaddatz had suddenly objected to the deposition's timing.

18

Argument, however, is not evidence. *See DeAngelis*, 556 S.W.3d at 855. Furthermore, the record reflects that the parties never actually reached an agreement.

More to the point, Rule 202 petitions present due-process concerns by demanding discovery from someone before telling them what the issues are. *See id.* OPG's Deposition-Terms Email purports to address only the requested deposition's time and pecuniary cost. Yet, a former employee shoulders an unquantifiable, substantial burden when forced to submit to a deposition before a former employer and disclose why he left to work for a competitor, explain what he is doing for that competitor, and discuss how his current work might or might not have been affected by knowledge gained while working for his former employer. *See Hewlett Packard*, 212 S.W.3d at 362. This is especially true when no lawsuit has been filed. *See id.*

OPG offered no evidence to address this burden, and OPG's sole stated benefit—determining whether it has cognizable claims against Kaddatz—does not outweigh this burden. *See id.* Likewise, OPG's offer to minimize Kaddatz's burden and expense without explaining why it needs pre-suit discovery—when, as discussed below, it has alternative means available—does not suffice. *See DeAngelis*, 556 S.W.3d at 842, 856–57.

## 3. Alternative Means of Discovery

Citing *In re Hanover Insurance Co.*, No. 01-13-01066-CV, 2014 WL 7474203, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, orig. proceeding) (mem. op.), Kaddatz points out that OPG could obtain the same discovery requested here via third-party

19

discovery in any of its three pending federal lawsuits against Titan and other former employees. Indeed, OPG admitted, and the trial court's order acknowledged, that OPG could obtain Kaddatz's deposition in the Titan Lawsuit.

Nonetheless, OPG maintains that it is entitled to pre-suit discovery despite available alternative means, arguing that *Hanover* is inapplicable for three reasons. First, OPG contends that *Hanover* "was analyzed under a different standard for Rule 202—deposition sought to prevent a failure or delay of justice (rather than a deposition where the benefit outweighs the burden)." *See* Tex. R. Civ. P. 202.1(a), (b). Regardless of which ground a petitioner chooses, however, it must still show that "the deposition[s] . . . must occur in a Rule 202 proceeding before, and not after," it sues the respondent. *DeAngelis*, 556 S.W.3d at 842, 857 (quoting *Hanover*, 2014 WL 7474203, at *3). OPG next argues that the *Hanover* petitioner had ample opportunity to obtain discovery in litigation that had been ongoing for over year. But OPG cites no evidence that it has been prevented from doing the same in any of its three federal lawsuits.

"Finally, and most importantly," OPG contends that *Hanover* does not apply because it did not concern a "serious ongoing and irreparable harm." According to OPG, it sought Kaddatz's pre-suit deposition "to limit continued or future harm caused by Kaddatz's suspected theft or misappropriation of OPG's Confidential Information." Yet OPG neither mentioned this ground in its petition nor offered any evidence to support it. *See id.* at 855–56. Nor does it explain why this distinction renders *Hanover* inapplicable. Regardless, as Kaddatz points out in his reply brief, any ongoing harm

20

was mitigated by an agreed preliminary injunction that OPG obtained in the Titan Lawsuit.[4] That injunction applies to the defendants and "anyone acting or purporting to act in concert or participation with them," and relevant to this mandamus proceeding, the injunction (1) prevents further OPG employment-agreement breaches; (2) preserves relevant documents, including OPG's confidential information and trade secrets; and (3) orders the return of documents containing OPG's trade secrets and confidential information. Thus, to the extent the ongoing-harm distinction is material, it has been resolved.

Citing no authority, OPG contends that the availability of discovery via existing litigation should not bar Rule 202 depositions. Otherwise, according to OPG, an "aggrieved victim" could not "investigate potential claims against other wrongdoers if it previously sued a responsible party that, for example, had disappeared, went insolvent, or refused to file an answer to the lawsuit."[5] But availability of discovery through other means must factor in. Because Rule 202 depositions "are not now and

_____

[4]Kaddatz attached a file-stamped copy of an Agreed Preliminary Injunction Order issued by the U.S. District Court, Southern District of Texas, in case number 4:23-cv-2268, styled *Oil Patch Group, Inc. v. Derek Elzner, Dwayne "Bubba" Beran, [and] Titan Accommodations, LLC*, on June 30, 2023. At Kaddatz's urging, we take judicial notice of this court record. *See Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012) (holding that, when asked, "a court will take judicial notice of another court's records if a party provides proof of the records").

[5]OPG has not asserted, and the record does not reflect, that any of these circumstances exist here. And OPG admitted at the hearing that it could sue Kaddatz but that it would prefer to first obtain pre-suit discovery to determine whether it "should or shouldn't bring this case."

21

never have been intended for routine use," allowing a party to use Rule 202 as mere preference over other currently available mechanisms would do just that. *Id.* at 855 (quoting *Jorden*, 249 S.W.3d at 423); *see Wolfe*, 341 S.W.3d at 933 ("Courts must strictly limit and carefully supervise pre-suit discovery to prevent abuse of the rule."); *see also In re Ramirez*, No. 13-21-00215-CV, 2022 WL 627155, at *10 (Tex. App.—Corpus Christi–Edinburg Mar. 3, 2022, orig. proceeding) (mem. op.) (granting mandamus to vacate order allowing Rule 202 deposition of petitioner's former employee concerning trade-secret theft because petitioner failed to meet its Rule 202 burden, admitted it could sue the former employee, and failed to explain why discovery could not be obtained from former employee in pending arbitration or lawsuit).

OPG also contends that it needs Kaddatz's Rule 202 deposition to "explore [Kaddatz's] role in the Former OPG Employees' coordinated resignations[] and their campaign to unlawfully help Elzner start a competing business using misappropriated trade secrets, confidential information, and property of OPG and, accordingly, explore whether [OPG] has potential legal claims arising from those events against [Kaddatz] individually." But OPG does not explain why it could not obtain this very same information from Kaddatz, or Elzner himself, in the Titan Lawsuit. *See, e.g.*, *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 613 (W.D. Tex. 2019) (permitting deposition of nonparty former employee regarding aspects of past employment with plaintiff, present employment, and relationship with defendant). The trial court's order even

22

acknowledged this by ordering OPG to stipulate that it would subtract its Rule 202 deposition time from Kaddatz's subsequent deposition in that lawsuit.

In sum, OPG failed to allege any facts or offer any evidence to explain why it is entitled to depose Kaddatz under Rule 202. *See Does*, 337 S.W.3d at 865; *DeAngelis*, 556 S.W.3d at 855–56. Accordingly, we hold that the trial court abused its discretion by granting OPG's Rule 202 petition. Having already concluded that Kaddatz has no adequate remedy by appeal, *see Campos*, 2007 WL 2013057, at *3, we sustain Kaddatz's sole issue.

### III. Conclusion

Having sustained Kaddatz's sole issue, we conditionally grant the writ of mandamus. The trial court is ordered to vacate its order granting OPG's Rule 202 petition and render an order denying the same. Our writ will issue only if the trial court fails to comply.

All pending motions are denied as moot.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: November 2, 2023

23